27505. WILSON *v.* EXPRESSMEN'S MUTUAL LIFE INSURANCE COMPANY.

Decided May 24, 1939. Rehearing denied July 8, 1939.

*William A. Thomas,* for plaintiff.

*Alston, Foster, Moise & Sibley, William B. Spann Jr.,* for defendant.

SUTTON, J. Vienna Wilson, as beneficiary, brought suit against Expressmen's Mutual Life Insurance Company, to recover on an insurance policy the face value of $1000, payable on the death of her husband, the insured, Ray Wilson, and statutory damages and attorney's fees. The case made by the pleadings and the evidence was substantially as follows: The policy in question was issued to take effect on May 1, 1936, and provided for the payment of $1000 as a death benefit upon the death of the insured during such time as the policy was in full force and effect. It recited, among other things, that it was issued in consideration of the payment in advance of $2.24, the receipt of which was therein acknowledged, constituting the first payment and maintaining the insurance until June 1, 1936, and of the payment of a like sum on said date of every calendar month thereafter during the lifetime of the insured, until premiums for twenty full years should have been paid from the day on which the policy took effect, May 1, 1936, and the policy also provided for a grace period of thirty-one days. It was further provided: "All premiums after the first are payable on or before their due date at the home office of the company or to a duly authorized agent of the company, but only in exchange for the company's official premium receipt signed by the president, a vice-president, a secretary, or the treasurer of the company, and countersigned by the person receiving the premium. No person has any authority to collect a premium unless he then holds said official premium receipt." At the time of the issuance of the policy the insured was, and had been for a number of years, employed by Railway Express Agency Inc., in Atlanta, Georgia, and only employees of that corporation could obtain insurance with the defendant company. A. L. Spratling was the agent, the local secretary of the insurance company, and was also an employee of the express agency. It was customary for employees holding policies with the insurance company to arrange with the pay-roll clerk of the express agency for the monthly premiums to be deducted monthly from their earnings. These employees were

paid twice a month, the first period being for the 1st to the 15th of the month, inclusive, and the second being for the 16th to the last day of the month, inclusive. Pay checks for the first period were issued and delivered on or about the 17th of each month. For the second period pay checks were issued and delivered on or about the 2d of the month following. From the date of the policy issued to the insured to the time he ceased to be employed by the express agency, namely, March 24, 1937, the deduction for his monthly insurance premium of $2.24 was made from his pay check covering the first half of the month, the check being issued and delivered to him on the 17th of the month.

Although it was recited in the policy that the first premium had been paid at the time of the issuance of the policy, the uncontradicted evidence was that in fact no payment was made by the insured and no deduction from his wages made until May 18, 1936. This amount of $2.24 represented one month's premium, and the insurance was in effect until June 1, 1936. The premium due on June 1, 1936, was not in fact paid on that date, but on the 17th of the month; and as the payment was within the 31 days of grace provided in the policy, the insurance did not lapse under that method. The premium which was due on March 1, 1937, was deducted at the time of the issuance of his pay check on March 17, 1937. Except in the way of deduction by the express agency from the wages of the insured, for the benefit of the insurance company and with his acquiescence, the insured never made any payment of premium. It was provided in the policy that no premium could be received unless a receipt had been issued, and the uncontradicted evidence was that only eleven receipts were issued, and that each was for the sum of $2.24. The following custom prevailed with reference to the method of collection: Spratling, the agent of the insurance company, just before the first of each month made out receipts for all insurance premiums due to the insurance company by the insured employees of the express agency, and these receipts were checked in the office of the local agent of the express agency to determine whether or not the respective employees' earnings were sufficient to take care of the monthly premiums due on the first of the month after the preparation of the receipts. Such receipts as earnings would not take care of were returned to Spratling for further handling. The receipts which

earnings would take care of were forwarded to the office of the chief pay-roll clerk on or about the 13th, or on or about the 27th or 28th of the month following the due date of the premium. Thus at that time the grace period had not expired, and the policies were still in force; and this practice was in accordance with the agreement with the employees as to the respective times when deductions were to be made from their earned wages, in some cases as of the first period of the month and in others as of the second period of the month. For wages earned in the first period employees were paid by check on the 17th of that month, and for wages earned in the second period they were paid by check on the 2d day of the following month. To take care of the deductions for insurance premiums entries were made on a form 966 used by the express agency. There was no testimony that this form was used exclusively for premium deductions, but the evidence was that it was used for "various" deductions against the wages of employees, and, after entries had been made, the respective forms were used by the pay-roll clerk in entering on the time sheets of the employees these various deductions, the net amount being paid by check to the employee. Sometimes the receipts covering the premium due on the preceding first of the month were handed to the employee along with his check and sometimes they were placed in a mail-box for him. In this manner and custom eleven collections were made from the insured, the last transaction being on March 17, 1937, when Wilson received his check for the first period of the month of March, less the deduction of the premium of $2.24 which was due on March 1, 1937. Thus Wilson's insurance was paid to April 1, 1937, and, because of the 31 days of grace, would not lapse until May 1, 1937.

On or about March 23, 1937, the insured became ill. He never returned to work, and died on July 3, 1937. On April 2, 1937, he had a credit balance of $2.41, and on that date the express agency, without the issuance of any receipt from Spratling, paid him that amount by check. This represented a balance due to him for time in the latter period of March, before his leaving the company's employment, and the settlement was made in the first period of a month, in which period there was no custom or agreement, with respect to Wilson, as to making any deduction for an insurance premium. Under the grace period, however, the policy

would not lapse until May 1, 1937, as hereinbefore shown. Wilson died on July 3, 1937, no further premium having been paid by him. In the meantime Spratling had indicated on his records that the policy had lapsed as of May 2, 1937, for non-payment of premium.

The jury returned a verdict in favor of the defendant. The plaintiff filed a motion for new trial, and by amendment added several special grounds, all of which are dealt with hereinafter. The court overruled the motion, and the exception is to that judgment. It is contended by counsel that under the evidence a verdict in favor of the plaintiff was demanded; that the premiums collected extended the insurance beyond the date of the death of the insured, especially in view of the grace period; that the deduction made on May 17 or May 18, 1936, was really the second payment of a premium, the policy having recited that $2.24 had been received at the time the policy was issued; that the deductions made on the 17th of the respective months were not for a premium due on the first day of the preceding month, but for a premium due on the first day of the following month; that, furthermore, the plaintiff had a credit balance of $2.41 at the end of March, 1937, for which check was issued on April 2, 1937; that the express agency was the agent of the insurance company and the money for a premium of $2.24 was available on the 1st of April, 1937, and should have been used for that purpose as premiums were to be deducted from his credits; that it was the fault of the insurance company if it was not deducted by causing a receipt to be issued; that with that amount the insured would have been protected at the time of his death; that, furthermore, the time sheets, introduced by the defendant to show eleven deductions of $2.24 each for premiums, also showed that, as per form 966, $1 was deducted from wages earned during the last period of November, 1936, and $6 was deducted from wages earned during the last period of December, 1936; and that these amounts added to the eleven payments of $2.24 each, $24.64, would make a total of $31.64, which would have extended the insurance beyond the date of the death of the insured. It is further contended that on April 9, 1937, the plaintiff, wife of the insured, tendered to Spratling $6.71, which amount would have extended the insurance beyond the date of the death of the insured, but Spratling refused to accept the money,

stating that the policy was then no good and had lapsed; and that by reason of such refusal the payment of further premiums was waived. These contentions will now be examined.

█ The plaintiff introduced in evidence only seven of the receipts issued by Spratling as secretary of the insurance company, but the defendant admitted that eleven such receipts in the amount of $2.24 each had been issued, and that deductions had been made from Wilson's wages accordingly. Under the provisions of the policy no premium could be accepted by the express agency unless a receipt had been issued and delivered to it by Spratling or some other officer of the company. Even though the insured had a credit of $2.41 at the end of March, no receipt was turned over to the express agency for collection of any premium at that time, and without it the express agency would not have been authorized to act for the defendant. The explanation of Spratling was that none was issued just before the 1st of April, 1937, because the agreement and custom, as to Wilson, provided only for deductions to be made from wages earned in the first period of the month, and nothing was deducted by the express agency in issuing check to Wilson on the second day of any month for money earned by him in the second period of the preceding month. Wilson having been forced by illness to abandon his employment, the express agency, without any communication from Spratling, issued a check on April 2, 1937, to close the account. The express agency was not, as contended by plaintiff, an agent of the insurance company for making collections whenever any credit appeared in Wilson's favor at the end of any month, but its authority arose only on the issuance by Spratling of a receipt to cover a premium. A deduction otherwise made could not be treated as having been made for the benefit of the insurance company, and the sum deducted would be due to the employee and not to the insurance company. But if, only for the purpose of argument, the contention of plaintiff that a premium should have been deducted from the $2.41 credit balance on April 2, 1937, be correct, and it should be said that the payment recited in the policy was paid at the time it was issued (which the uncontradicted evidence showed was not true), if these were added to the eleven premiums represented by the receipts, there would be a total of only thirteen payments, and these would extend the insurance not beyond June 1, 1937, and with the grace

period of thirty-one days the policy would lapse at the close of July 1, 1937. Consequently, when the insured died on July 3, 1937, the insurance could not be said to have been in force. It is also contended by the plaintiff that because of the failure or refusal of the defendant, through its secretary Spratling, to cause a premium to be collected from the $2.41 credit balance of Wilson, it thereby refused a premium and waived further payment of premiums. For the reasons above shown, this contention is without merit.

In respect to the $7 which the plaintiff contends was deducted from the insured's wages in addition to the eleven deductions of $2.24 each, it must be said that there was no evidence that it was deducted for insurance premiums. The time tickets showed deductions of $1 and $6 in the second periods of November and December, respectively, but the plaintiff did not prove that the deductions were made for insurance purposes, and, as shown above, the express agency would not have been authorized to deduct these amounts, as deductions could be made only when receipts had been issued, and, in the case of Wilson, issued for deductions to be made from wages earned in the first period of the month. The uncontradicted evidence was that only eleven receipts had been issued, for all of which deductions had been made from wages earned during the first period of months. Furthermore, the plaintiff failed to show that, although deducted as per form 966, the deductions were for insurance premiums, and the testimony otherwise was that this form 966 was used for "various" deductions; and for aught that appears from the evidence these amounts might have represented advances of money made to the employee at the times in question. While it is contended that the wife of the insured made a tender of $6.71 on April 9, 1937, at a time when the grace period had not expired, the wife testifying to this effect and being corroborated by a sister of the deceased insured, Spratling denied that anything was said to him on the subject or that any tender whatever was made. The court specifically charged the jury on the issue thus made, and it was resolved in favor of the defendant. For reasons above shown, the jury was authorized to return a verdict in favor of the defendant, and the general grounds of the motion for new trial are without merit.

■ The first special ground of the motion complains that the

court erred in refusing to charge, as requested, that "If any doubt should exist in regard to the construction of the contract of insurance, the doubt should be resolved in favor of the insured, and the policy should be liberally construed in favor of the validity of the contract and against the insurance company who wrote the policy, and which is presumed to know the Georgia statute, the benefit of which it has waived." No issue was raised as to the construction of the insurance contract, and the requested charge was inapplicable, unnecessary; and the court did not, for any reason assigned, err in refusing to charge as requested.

The second special ground complains that the court erred in refusing to charge, as requested, that "Although the pleadings are not evidence, without offering the same in evidence either party may avail himself of allegations or admissions made in the pleadings of the other." The complaint succinctly stated is that the defendant in its answer admitted the allegations of certain paragraphs of the petition, which admissions were contrary to the evidence introduced by the defendant, and that had the court charged as requested the admissions would in all probability have materially aided the jury and would have caused it to render a verdict for the plaintiff. It would require undue and unprofitable elaboration to set forth the details of the ground of the motion, and it is deemed sufficient to state that the evidence for the defendant did not conflict with the admissions in its answer, and that the plaintiff was not harmed, for any reason assigned, by the refusal of the court to give the requested charge. Inasmuch as the defendant's evidence was not in conflict with the admissions made by its answer, the court did not err, for any reason assigned in the third special ground of the motion, in refusing to charge, as requested by plaintiff, that "The jury are not bound to accept the testimony of a witness which is contradictory to a plea he has filed."

Grounds 4 to 10, inclusive, complain of the refusal of the court to give certain requested charges. These were inapplicable and not adjusted to the facts of the case, and the court did not err, for any reason assigned, in refusing such requests. The court did not err in refusing to charge the jury, as requested, that certain named persons in the offices of the express agency who received a countersigned receipt from Spratling, secretary of the defendant insurance company, for the purpose of collecting premiums, were acting as

the agents of the insurance company. The uncontradicted evidence was that such persons were employees and agents of the express agency alone, and the records made by them could not, as contended by the plaintiff, be considered by the jury as records of the insurance company. The time tickets introduced by the defendant were prepared by employees of the express agency, and were introduced by the defendant for the purpose of showing the deductions corresponding to the eleven receipts issued by Spratling, which the uncontradicted evidence showed were all the receipts issued, and it was not shown by the plaintiff that any other deduction from the insured's wages was for an insurance premium. There being no evidence to support it, a charge of the court that such persons were acting as agents of the defendant in making all of the deductions shown on the insured's time tickets, and that such sums were deducted for insurance premiums, would have been error.

Ground 12 complains that the court erred in not charging, as requested, that it was the duty of the court to direct a verdict for the plaintiff under the circumstances and evidence of the case; and the ground is without merit, for the reasons shown in the first division of this opinion. Furthermore, it is never error for the court to refuse to direct a verdict.

Ground 13 complains of the court's withdrawing from the consideration of the jury the question of recovery of damages and attorney's fees on account of alleged bad faith of the defendant in refusing to pay the plaintiff the face value of the policy. Under the evidence a finding was demanded, as a matter of law, that the refusal to pay was not in bad faith, and the court did not err in the respect complained of. Especially is no reversal required where the jury properly finds that no liability existed against the defendant under the policy of insurance.

Ground 14 complains that the court erred in failing to charge the jury, without request, that "all doubt in the construction of policies of insurance should be resolved in favor of the validity of the contract and against the company who wrote the policy." No question of construction of the policy was raised by the pleadings or the evidence, and there is obviously no merit in this ground.

After the jury had deliberated in its room for some time, it entered the court-room and the foreman inquired of the court if

the jury would be permitted to see form 966 on which deductions were made by the express agency. This form had not been introduced in evidence, but there had been testimony regarding its use. The court instructed the jury as follows: "I must say this in response to the inquiry of the juror: The court or judge is not permitted to express or intimate any opinion that it might have concerning any question of fact, that being exclusively the duty of the jury to decide. On any legal questions the court may give instructions as to a question, but I think I shall say this: that evidence consists not alone of the oral testimony that comes from the witness stand, but also of all papers or documents that may have been tendered in evidence by counsel and admitted in evidence by the court for consideration by the jury. Now, where there are documents in evidence, those documents may be considered by the jury, but the jury could not go outside; that is to say, it would not be proper for the jury to consider evidence, either oral or documentary, that had not been introduced into the case as evidence in the case. If the inquiry—I am not quite clear—is for additional evidence, then I would not be able to help you on that. If it is as to whether or not you can consider the documents or papers, the answer is yes. Has what I have said been of any help to you?" Whereupon the foreman answered: "I think so, sir. We have asked for information regarding a form which we do not have, and therefore I think your answer is quite clear." It is contended that the court erred in such instruction, in that in effect the jury was informed that it could not consider form 966, "which was not in evidence as a document but was in evidence according to the uncontradicted evidence of both witnesses, A. L. Spratling and Roy Lathrop; that is to say, both of said witnesses testified that form 966 was the form on which the entries of deductions were made, and on the time record the entry in column marked 'form 966' went to apply upon the premiums on policy in suit. And witness Spratling testified that Miss Sloan would not make entries to deduct the premiums unless she received the receipts from agent, A. L. Spratling." Form 966 was not in evidence, but oral testimony had been given in reference thereto, and apparently it is the contention of the plaintiff that the court eliminated from the jury the consideration of such oral testimony. The instruction of the court is not susceptible of this construction. It was

appropriate to the evidence, and was not error for any reason assigned.

*Judgment affirmed. Stephens, P. J., and Fellon, J., concur.*